# STATE OF MICHIGAN

# COURT OF APPEALS

BRADLEY D. ATKINSON,

       Plaintiff-Appellee,

v

AMBER L. KNAPP a/k/a AMBER L.
ATKINSON,

       Defendant-Appellant.

UNPUBLISHED
June 9, 2015

No.  324487
Ingham Circuit Court
Family Division
LC No.  08-001244-DM

Before:  RIORDAN, P.J., and DONOFRIO and BECKERING, JJ.

PER CURIAM.

Defendant appeals by right the trial court's dismissal of her motion to modify parenting time.  Defendant sought to modify parenting time such that her daughter would attend school in the Grand Rapids area rather than continuing at her current school in Lansing.  For the reasons provided herein, we affirm.

The parties were married in 2001 and had one child together.  They divorced in November 2008 and both continued to reside in Lansing.  At the time of divorce, plaintiff had parenting time from 6:00 p.m. Thursday through 6:00 p.m. Monday, and defendant had parenting time from 6:00 p.m. Monday through 6:00 p.m. Thursday.  Defendant also had parenting time one weekend per month.  Apparently the parties had by agreement modified their parenting-time schedules somewhat, which resulted in plaintiff having parenting time from 3:00 p.m. Friday through 3:00 p.m. Tuesday.

When the child was old enough, she was enrolled in preschool in Lansing.  Both parties eventually remarried, and in June 2011 defendant and her husband moved to a community near Grand Rapids.  In September 2012, the child began attending elementary school in Lansing.

Defendant moved for a change in parenting time in September 2012, arguing that there had been a "change in circumstances," predicated on both parties remarrying, defendant moving to Grand Rapids with her new husband, the child developing ties in Grand Rapids, and defendant continuing to provide all transportation to parenting-time exchanges.  Defendant argued it was in her daughter's best interests to enroll in kindergarten in Grand Rapids and to remain with her during the week during the school year.  The motion was referred for conciliation, and it was recommended that the child remain enrolled in Lansing schools because she had an established

-1-

environment there in which she was thriving. Both parties objected, and a referee hearing was held. The referee found that defendant presented sufficient evidence to establish the requisite change of circumstances but also found that an established custodial environment existed with both parties and that the proposed change would alter that custodial environment. The referee determined that defendant failed to show by clear and convincing evidence that granting defendant's motion would be in the child's best interests.

Following objections, the trial court initially declined to hold a de novo review, but did so following remand from this Court. See *Atkinson v Knapp*, unpublished opinion per curiam of the Court of Appeals, issued December 17, 2013 (Docket No. 316510). On remand, the court found that defendant had not met her burden to show a proper cause or a change in circumstances to reopen the issue of custody. Alternatively, the court found that defendant failed to show by clear and convincing evidence that a change would be in the child's best interests. Defendant now appeals.

## I. STANDARDS OF REVIEW

"Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Pickering v Pickering*, 268 Mich App 1, 5; 706 NW2d 835 (2005). Under the great weight of the evidence standard, this Court should not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction. *Rittershaus v Rittershaus*, 273 Mich App 462, 473; 730 NW2d 262 (2007). In child custody cases, "[a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). Clear legal error occurs "when the trial court errs in its choice, interpretation, or application of the existing law." *Shulick v Richards*, 273 Mich App 320, 323; 729 NW2d 533 (2006). [*Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010).]

## II. PROPER CAUSE OR CHANGE IN CIRCUMSTANCES

Defendant first argues that the trial court employed the incorrect standard in determining whether she showed the necessary proper cause or change in circumstances to modify parenting time.

A trial court's determination of child custody and parenting time serve different purposes. *Id.* at 28. Child custody determinations are primarily concerned with "the stability of the child's environment," while "the focus of parenting time is to foster a strong relationship between the child and the child's parents." *Id.* at 28-29. In either case, a trial court may modify or amend "its previous judgments or orders" but only for "proper cause shown or because of change of circumstances." MCL 722.27(1)(c).

This Court has explained that depending on whether the requested change to parenting time affects a child's established custodial environment,[1] differing standards are used to determine whether there was a sufficient proper cause or change in circumstances. *Shade*, 291 Mich App at 25-27.

"If a change in parenting time results in a change in the established custodial environment, then the *Vodvarka* framework is appropriate." *Id.* at 27. In *Vodvarka*, this Court determined that "to establish "proper cause" necessary to revisit a custody order, a movant must prove . . . the existence of an appropriate ground for legal action to be taken by the trial court. The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being." *Vodvarka*, 259 Mich App at 512.

But if the change in parenting time would not affect the child's established custodial environment, then a less stringent standard is used. *Shade*, 291 Mich App at 28.

> The Court in *Shade* declined to precisely define what proper cause or change of circumstances would be sufficient to warrant a change in parenting time, but nevertheless determined that the types of normal life-changes experienced by the child in its case were sufficient to warrant modification of the parenting time, even though those changes would be insufficient to establish grounds for a change in custody under the definitions applied in *Vodvarka*. [*Kaeb v Kaeb*, ___ Mich App ___; ___ NW2d ___ (Docket No. 319574, issued March 12, 2015), slip op, p 6, citing *Shade*, 291 Mich App at 31.]

Thus, the first task for a court is to determine whether any established custodial environment exists and whether the proposed change in parenting time would affect that environment. See *Pierron v Pierron*, 486 Mich 81, 92; 782 NW2d 480 (2010). Here, the trial court found that the child had an established custodial environment with both parents, and defendant does not challenge this finding on appeal. But, by also requiring defendant to show by clear and convincing evidence that a modification is in the child's best interests, the trial court also implicitly found that defendant's proposed change in parenting time would alter the established custodial environment, see Part III, *infra*. This finding is not against the great weight of evidence. Defendant claims that the trial court's failure to clearly articulate that the requested change would alter the custodial environment requires a remand. We do not agree because this Court may rely on "a finding [that] can easily and clearly be drawn from the trial court's written opinion." *Powery v Wells*, 278 Mich App 526, 530; 752 NW2d 47 (2008).

---

[1] "The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered." MCL 722.27(1)(c).

Where the parties have nearly equal parenting time, a change in parenting time that will no longer continue this arrangement may change the child's established custodial environment. *Id.* For example, when a change in parenting time changes the status quo by relegating a party "to the role of a 'weekend' parent," a change in the custodial environment may result. *Id*. at 528.

Under the parenting-time schedule adopted at the time of divorce, plaintiff maintained near equal parenting time with defendant, including parenting time on some school days and nights. If the court granted defendant's motion, plaintiff would no longer have weekday parenting time and would see his daughter only on weekends or during school breaks. As the referee concluded, plaintiff would become a "weekend" parent. It is not that having parenting time only on the weekends is inherently inferior. But when the custodial environment is characterized by parental involvement during a child's weekdays, a time that revolves around the child's schooling and all that entails, eliminating a parent's involvement in those circumstances constitutes an important change in the environment. The court's finding on this matter is not against the great weight of evidence, nor does it constitute an error of law.

Therefore, given that defendant's request to change parenting time would alter the child's established custodial environment, defendant had to establish a proper cause or change in circumstances as described in *Vodvarka*. Again, defendant argued that there had been a change of circumstances because both parties remarried, defendant moved, the child had developed ties in west Michigan, and defendant provided transportation to parenting-time exchanges. These are insufficient to establish a change of circumstances under *Vodvarka*. First, a remarriage and move are normal life changes following a divorce. The subsequent transportation changes and developing new ties are also normal changes in the life of a child. Indeed, it should be anticipated that a child would develop new ties in a changed setting. Second, defendant has not shown that the changes will have "a *significant* effect on the child's well-being." *Vodvarka*, 259 Mich App at 513 (emphasis in original). Defendant's argument is one of convenience. Although an hour commute to school certainly is not ideal, defendant has not shown, or even argued, that a lengthy commute would have a significant effect on the child.

Accordingly, we conclude that the trial court did not err in determining that defendant failed to establish a proper cause or change in circumstances, in accordance with *Vodvarka*, to alter the parenting-time arrangement.

## III. BEST-INTEREST FACTORS

As the trial court did below, we alternatively address the best-interest factors.

Defendant first argues that the trial court incorrectly employed the elevated clear-and-convincing burden of proof for the best interests instead of a preponderance of the evidence standard. This was not error. If a proposed modification to parenting time changes the established custodial environment, the moving party must show by clear and convincing evidence that it is in the child's best interests. *Pierron*, 486 Mich at 92; *Shade*, 291 Mich App at 23. As already discussed, defendant's proposed change to the parenting time would have affected the child's established custodial environment. Thus, assuming arguendo that defendant did show a proper cause or change in circumstances, she needed to prove by clear and convincing evidence that the change was in the child's best interests.

-4-

MCL 722.23 provides as follows:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

The court considered the best-interest factors. The court found that factors (i), (k), and (*l*) were not relevant. The court explained that it was not considering factors (k) or (*l*) because there were no allegations of domestic violence. Regarding factor (i), the court "determined that this seven-year[-]old child's age and maturity to provide a reasonable preference was not relevant to these proceedings".

The court found that seven of the factors—(a) (love and emotional ties), (b) (religion), and (c) (food, clothing, and medical care), (e) (family unit permanence), (f) (moral fitness), and (g) (parent mental and physical health), and (j) (willingness to facilitate a relationship with the other parent)—weighed equally between the parties.

The court found that factor (d) (time in a stable environment) weighed in favor of plaintiff because the current parenting time had been used for over three years and it was "in the best interest of this child to maintain continuity." Similarly, the court found that factor (h) (home and school record of the child) also weighed in favor of plaintiff because the court found that the child primarily has resided in Lansing, was excelling in a Lansing school, and has friends and is engaged in the Lansing community.

As for the court's handling of the statutory best-interest factors, defendant does not argue that the factors the court considered were incorrectly determined. Nor does she argue that other factors should have been weighed in her favor. Her sole argument with respect to these factors is that the court erred in not considering the child's preference, factor (i), when analyzing the best-interest factors. In making this argument, she does not assert that the child had a preference in favor of defendant, or, more importantly, that it would have tipped the balance in her favor.

Where a child has sufficient age to express a preference, the trial judge must consider her preference. *Kubicki v Sharpe*, 306 Mich App 525, 545; 858 NW2d 57 (2014), citing *Bowers v Bowers*, 190 Mich App 51, 55; 475 NW2d 394 (1991). The referee spoke with the child and considered the preference she expressed. In contrast, the trial court stated that factor (i) was "not relevant" given that she was seven years old. When the proposed change would modify the established custodial environment, "the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case." *Pierron*, 486 Mich at 92-93. "Children of six . . . years of age are old enough to have their preferences given *some* weight in a custody dispute, especially where there was a prior custody arrangement." *Bowers*, 190 Mich App at 55-56 (emphasis added). Given the court's conclusion that the requested change would operate to change the custodial environment, it should have considered the child's preference.

However, reversal is not warranted where the child's preference, if she had one, "would not have changed the trial court's ruling" on the motion. *Sinicropi v Mazurek*, 273 Mich App 149, 182-183; 729 NW2d 256 (2006). Again, defendant has not argued that if the court had considered the child's preference, the best-interests determination would have changed. In any event, it is clear that even if the child did express a preference for altering the parenting-time plan in accordance with defendant's request, this sole factor in defendant's favor in no way would be enough now to show that the change is, overall, in the child's best interests. Notably, defendant did not challenge the court's findings with respect to the other factors, in which seven were deemed equal between the parties, two were in plaintiff's favor, and zero were in defendant's favor. Even assuming this factor (i) to be in defendant's favor, it is dubious that defendant could show that the change in parenting time was in the child's best interests. While it is merely highly doubtful that this one factor in defendant's favor would tip the overall balance of all the best-interests factors in defendant's favor with a preponderance of the evidence standard, it is a forgone conclusion that it would not tip the balance in favor of defendant using the appropriate clear and convincing standard.

In sum, if the trial court was going to evaluate the best-interest factors, it should have interviewed the child for factor (i). But this deficiency is of no consequence because it is clear that the court would not have reached a different conclusion had the court made such an inquiry. *Id.*

Affirmed.

/s/ Michael J. Riordan
/s/ Pat M. Donofrio
/s/ Jane M. Beckering